**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFREY HENNESSY, | : | Civil No. 3:25-cv-752 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| BERNADETTE MASON, *et al.*, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Jeffrey Hennessy ("Hennessy")[1], an inmate housed at the State Correctional

Institution, Mahanoy, Pennsylvania ("SCI-Mahanoy"), initiated this *pro se* civil rights action

pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended

complaint. (Doc. 33). Named as Defendants are Superintendent Mason, Corrections

Classification Program Manager ("CCPM") Kanjorski, Deputy Superintendent of Centralized

Services ("DSCS") Banta, Deputy Superintendent of Facility Management Heyer, Licensed

Psychologist Manager ("LPM") Chuma, Unit Manager Gower, Corrections Health Care

Administrator ("CHCA") Houser, Americans with Disabilities Act ("ADA") Coordinator

Fackler, DSCS Sokaloski, Secretary Harry, CCPM and Prison Rape Elimination Act

("PREA") Coordinator Muick, ADA Coordinator Reifer, and LPM Whitaker. (*Id.* ¶¶ 4-16).

---

[1]  Hennessy self-identifies as an "adult transgender woman[.]" (Doc. 33 ¶ 3). Throughout
Hennessy's filings, Hennessy uses "she/her" pronouns. (*See* Doc. 33). The Court thus refers to Hennessy
she/her.

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 38). For the reasons set forth below, the motion will be granted in part and denied in part, and Hennessy will be granted limited leave to amend.

## I.    **Allegations of the Amended Complaint**

On May 1, 2024, Hennessy submitted an Inmate Request to Staff Form (DC-135A) to Defendant Kanjorski, requesting a female inmate uniform. (Doc. 33 ¶ 17). Hennessy alleges that, on May 7, 2024, she met with members of the PREA Accommodation Committee ("PAC")—consisting of Defendants Kanjorski, Chuma, Heyer, Gower, and Banta—to make a formal request for a female inmate uniform and secondary treatments for gender dysphoria ("GD"). (*Id.* ¶ 18). At this meeting, Hennessy allegedly informed these Defendants of "known problems and concerns related to [a] diagnosis of GD, as well as mental and physical ailments." (*Id.* ¶ 19). On May 12, 2024, Defendants Kanjorski and Gower allegedly informed Hennessy that her request for a female inmate uniform was denied. (*Id.* ¶ 20).

On April 30, 2025, a second PAC meeting was held with Defendants Muick and Gower, and a non-Defendant counselor, to re-address secondary treatments, including Hennessy's request for a female inmate uniform, castration, and laser hair removal. (*Id.* ¶¶ 21, 22). On April 30, 2025, Defendant Muick issued a response to a Form DC-135A and informed Hennessy that her request for secondary treatments was denied. (*Id.* ¶ 23).

2

On May 12, 2024, Hennessy filed a grievance regarding her request for a female inmate uniform.  (*Id.* ¶ 24).  On June 3, 2024, Defendant Kanjorski issued the initial review response and denied the grievance.  (*Id.* ¶ 27).  Hennessy appealed to the Facility Manager, Defendant Mason, and, on June 26, 2024, Defendant Mason upheld the denial.  (*Id.* ¶ 28).  Hennessy then appealed to final review, and the Chief Grievance Officer upheld the denials on appeal.  (*Id.* ¶¶ 30, 31).

On May 16, 2024, Hennessy submitted an Inmate Disability Accommodation Request Form to Defendant Houser, wherein she requested a female inmate uniform.  (*Id.* ¶ 25; Doc. 34, at 10).  On June 26, 2024, Defendant Fackler denied the Inmate Disability Accommodation Request and advised that "[i]t is not the role of the Central Office Inmate Disability Accommodation Committee to determine issuance of gender affirming clothing… and [such] [r]equests may be made to the institutional PAC."  (Doc. 33 ¶ 29; Doc. 34, at 19).

On March 7, 2025, Hennessy submitted a second Inmate Disability Accommodation Request in a DC-135A Form to Defendant Houser, wherein she requested a female inmate uniform.  (Doc. 33 ¶ 32; Doc. 34, at 24).  On April 8, 2025, Defendant Reifer determined that "[n]o [f]urther [a]ction" would be taken because the committee was informed that Hennessy "[was] issued all items outlined in the DC-ADM 815 for Females/Trans Women Only."  (Doc. 33 ¶ 33; Doc. 34, at 25).

On June 17, 2025, Hennessy submitted a third Inmate Disability Accommodation Request in a DC-135A Form to Defendant Houser, wherein she requested a female inmate

3

uniform, castration, and laser hair removal. (Doc. 33 ¶ 34; Doc. 34, at 26). Hennessy requested that Defendant Houser forward the request to the proper recipients. (Doc. 34, at 26). Upon review, Defendant Reifer denied Hennessy's request for castration and laser hair removal and advised her that "[i]t is not the role of [the Central Office Inmate Disability Accommodation Committee] to make clinical decisions regarding [her] care." (Doc. 33 ¶ 35; Doc. 34, at 27). Defendant Reifer also determined that "[n]o [f]urther [a]ction" would be taken as to Hennessy's request for a female inmate uniform because the committee was informed that she "[was] issued all items outlined in the DC-ADM 815 for Females/Trans Women Only." (Doc. 34, at 33).

Hennessy alleges that Defendant Mason, in her role as Superintendent, is "directly responsible for the care, custody, and control of Plaintiff." (Doc. 33 ¶¶ 4, 41). Defendant Mason allegedly visits each housing unit every week. (*Id.* ¶ 39). During these visits, Hennessy allegedly spoke with Defendant Mason about gender-affirming care and the issuance of a female inmate uniform and made requests for a female inmate uniform. (*Id.*). Hennessy asserts that "[a]ll requests were denied." (*Id.*). By failing to facilitate secondary care, Hennessy alleges that Defendant Mason "was negligent[ ] or deliberately indifferent to Plaintiff's serious medical needs" in violation of the Eighth Amendment. (*Id.* ¶ 41).

Hennessy alleges that Defendant Harry, in her role as Secretary, is responsible for drafting and implementing policies, and is responsible for "oversight of the care, custody, and control of all inmates," and, as drafter and facilitator of department policy, allowed a

4

policy to continue that denied Hennessy secondary treatments for gender dysphoria (specifically, a policy that "denies the Plaintiff the female inmate uniform"). (*Id.* ¶¶ 13, 71, 72, 74). Hennessy alleges that Defendant Harry is "liable[ ] under the doctrine of respondeat superior." (*Id.* ¶ 74). She contends that Defendant Harry is liable under the Eighth Amendment for negligence and deliberate indifference to serious medical needs. (*Id.* ¶ 74). Hennessy also alleges that Defendant Harry violated her Fourteenth Amendment right to equal protection by administering a policy that denied her a female inmate uniform. (*Id.*).

Hennessy claims that Defendant Kanjorski, as CCPM and PREA Coordinator, was the Chairperson at the May 7, 2024 PAC meeting and was aware of Hennessy's struggles with gender dysphoria. (*Id.* ¶ 42). Hennessy alleges that she submitted DC-135A Forms to Defendant Kanjorski and had direct conversations with Kanjorski about inmate clothing. (*Id.* ¶ 43). Defendant Kanjorski allegedly "made the decision to continue to clothe the Plaintiff in the male uniform" and was a "direct participant in[ ] denying Plaintiff secondary treatments." (*Id.* ¶¶ 47, 48). Hennessy alleges that Defendant Kanjorski was negligent or violated her rights under the Eighth Amendment, as well as her Fourteenth Amendment rights to equal protection and due process of law. (*Id.* ¶¶ 48, 49).

Hennessy alleges that Defendants Banta and Heyer were members of the May 7, 2024 PAC meeting and were "implicit in the denial of secondary treatments." (*Id.* ¶¶ 50, 52,

53, 55).  As a result, Hennessy alleges that Defendants Banta and Heyer were negligent or violated her rights under the Eighth Amendment.  (*Id.* ¶¶ 52, 55).

Hennessy asserts that Defendant Chuma was a member of the May 7, 2024 PAC meeting, oversaw Hennessy's psychological treatment, and "actively disregarded Plaintiff's request for secondary treatments."  (*Id.* ¶¶ 56-58).  Hennessy asserts that Defendant Chuma was negligent or violated her rights under the Eighth Amendment.  (*Id.* ¶ 58).

Hennessy contends that Defendant Gower was a member of the May 7, 2024 PAC meeting and, as Unit Manager, had knowledge of Hennessy's needs.  (*Id.* ¶¶ 59-61).  Hennessy asserts that Defendant Gower was negligent or violated her rights under the Eighth Amendment.  (*Id.* ¶ 61).

Hennessy alleges that Defendant Houser, as CHCA, received her DC-135A Forms and "refused to act" despite being aware of Hennessy's serious medical need.  (*Id.* ¶¶ 64, 65).  In addition, Defendant Houser allegedly "failed to appropriately brief" the ADA coordinators concerning Hennessy's requests.  (*Id.* ¶ 65).  Hennessy alleges that Defendant Houser is "liable under the ADA and Eighth Amendment for negligence[ ] or deliberate indifference."  (*Id.* ¶ 65).

Hennessy next alleges that the ADA coordinators, Defendants Fackler and Reifer, failed to fully and appropriately investigate her Inmate Disability Accommodation Requests.  (*Id.* ¶¶ 66, 67, 82).  Hennessy contends that Defendant Fackler denied one request for secondary treatments, and Defendant Reifer denied two requests for secondary treatments.

6

(*Id.* ¶¶ 67, 83). She thus asserts that Defendants Fackler and Reifer are "liable under the ADA and Eighth Amendment for negligence[ ] or deliberate indifference." (*Id.* ¶¶ 67, 84).

Hennessy alleges that Defendant Sokaloski, as DSCS, was a member of the April 30, 2025 PAC meeting and was involved in the decision to deny her second request for secondary treatments. (*Id.* ¶ 68). Defendant Sokaloski allegedly "failed to investigate the issue of Plaintiff's secondary treatments" or failed to meet with Hennessy. (*Id.* ¶ 69). Hennessy alleges that Defendant Sokaloski violated her rights under the Eighth Amendment "for negligence[ ] or deliberate indifference" and violated her right to equal protection under the Fourteenth Amendment. (*Id.* ¶ 70).

Hennessy avers that Defendant Muick held the second PAC meeting on April 30, 2025. (*Id.* ¶ 75). She alleges that Defendant Muick, as CCPM and PREA Coordinator, violated DC-ADMM 008 by not affording Hennessy the opportunity to discuss her issues with the full PAC. (*Id.* ¶ 76). Hennessy further alleges that she spoke with Defendant Muick and corresponded with him through DC-135A Forms, but he ultimately denied Hennessy's request for secondary treatments. (*Id.* ¶¶ 77, 78). Hennessy alleges that Defendant Muick "is liable under the Eighth Amendment for negligence[ ] or deliberate indifference to Plaintiff's serious medical need." (*Id.* ¶ 79). Additionally, Hennessy alleges that Defendant Muick violated her Fourteenth Amendment right to equal protection by denying her request for a female inmate uniform and violated her Fourteenth Amendment right to due process of

law by failing to conduct a PAC meeting with all parties, in violation of DC-ADM 008. (*Id.* ¶¶ 80, 81).

Lastly, Hennessy alleges that Defendant Whitaker, as LPM, was a member of the April 30, 2025 PAC meeting and is responsible for her psychological treatments. (*Id.* ¶¶ 85, 86). She contends that Defendant Whitaker "actively disregarded Plaintiff's request for secondary treatments." (*Id.* ¶¶ 88). Hennessy alleges that Defendant Whitaker "is liable under the Eighth Amendment for being negligent[ ] or deliberately indifferent to Plaintiff's serious medical need." (*Id.* ¶ 89). Hennessy also alleges that Defendant Whitaker violated her Fourteenth Amendment right to equal protection by failing to provide her with a female inmate uniform. (*Id.* ¶ 89).

In summary, and based on these factual allegations, Hennessy sets forth the following claims: (1) an Eighth Amendment claim against all Defendants, alleging that their denial of her request for secondary treatments demonstrates deliberate indifference to her serious medical needs (gender dysphoria) (*id.* ¶¶ 39-89); (2) a Fourteenth Amendment equal protection claim against Defendants Kanjorski, Sokaloski, Harry, Muick, and Whitaker because "biological females are issued the female inmate uniform" (*id.* ¶¶ 42-49, 68-81, 85-89); (4) a Fourteenth Amendment due process claim against Defendants Kanjorski and Muick, based on Kanjorski's violation of DC-ADM 804 and Muick's violation of DC-ADM 008 (*id.* ¶¶ 42-49, 75-81); and (5) an ADA claim against Houser, Fackler, and Reifer based on their denial of her request for secondary treatments (*id.* ¶¶ 62-67, 82-84).

8

For relief, Hennessy seeks injunctive relief in the form of a female inmate uniform, castration, and laser hair removal.  (*Id.* ¶¶ 90, 91).

## II.    <u>Legal Standard</u>

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

9

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.    **Discussion**

Defendants move to dismiss the amended complaint on the following grounds: (1) Defendants Harry, Mason, and Houser must be dismissed for lack of personal involvement;

10

(2) the Eighth Amendment claim against all Defendants must be dismissed for failure to state a claim for relief; (3) the Fourteenth Amendment due process claim against Kanjorski and Muick must be dismissed for failure to state a claim for relief; (4) the Fourteenth Amendment equal protection claim against Kanjoriski, Sokaloski, Harry, Muick, and Whitaker must be dismissed for failure to state a claim; and (5) the ADA claim against Fackler, Reifer, and Houser must be dismissed for failure to state a claim. (Doc. 43). The Court will address each argument in turn.

### A.  Personal Involvement of Harry, Mason, and Houser

Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs…Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or

11

involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Hennessy alleges that Secretary Harry is responsible for all Department policies, as well as the "oversight of the care, custody, and control of all inmates." (Doc. 33 ¶¶ 13, 71). Hennessy further alleges that Defendant Harry allowed a policy to continue that denied Hennessy secondary treatments and that Harry is thus "liable[ ] under the doctrine of respondeat superior." (*Id.* ¶ 74). Similarly, with respect to Superintendent Mason, Hennessy alleges that she was "directly responsible for the care, custody, and control of Plaintiff," and failed to "facilitate secondary care to the Plaintiff" by denying her request for a female inmate uniform. (*Id.* ¶¶ 4, 39, 41). With respect to CHCA Houser, Hennessy alleges that Houser responded to inmate request slips, forwarded Hennessy's requests to the ADA Coordinators, and "failed to appropriately brief the ADA Coordinators." (*Id.* ¶¶ 10, 62, 63).

First, the filing of a grievance is not sufficient to show the actual knowledge required for personal involvement. It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not

12

sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006). In accordance with the foregoing, any attempt by Hennessy to establish liability against Defendants Mason and Houser based upon their response to inmate requests or grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005).

Second, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207. Hennessy sets forth respondeat superior liability against Defendants Harry and Mason, which seeks to hold them liable based on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207.

Instead, if Hennessy seeks to hold Defendants Harry and Mason liable as supervisors for unconstitutional acts by their subordinates, her allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572,

13

586 (3d Cir. 2004) (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316

(3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and

describing "two general ways in which a supervisor-defendant may be liable for

unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor*

*v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-

and-practice strand of supervisory liability—a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor
> failed to employ, and show that (2) the existing custom and practice without
> the identified, absent custom or procedure created an unreasonable risk of
> the ultimate injury, (3) the supervisor was aware that this unreasonable risk
> existed, (4) the supervisor was indifferent to the risk; and (5) the underling's
> violation resulted from the supervisor's failure to employ that supervisory
> practice or procedure.  Put another way, the inmate must identify the
> supervisor's specific acts or omissions demonstrating the supervisor's
> deliberate indifference to the inmate's risk of injury and must establish a link
> between the supervisor, the act, and the injury.

*Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v.*

*Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).

For the second theory of supervisory liability—participating in, directing others to, or

knowledge and acquiescence of constitutional violation—generalized allegations that a

supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient

to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*,

822 F. App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants were in charge of

agencies that allowed this to happen, and that liability stemmed merely from defendants'

'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting *Evancho*, 423 F.3d at 354). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Hennessy's amended complaint adequately pleads a supervisory liability claim against Defendants Harry and Mason. Hennessy alleges that Defendant Harry, acting with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused Hennessy to suffer harm. (Doc. 33 ¶¶ 39-41, 71-74). Hennessy describes this policy as one that "denies the Plaintiff the female inmate uniform[.]" (*Id.* ¶ 74).

Hennessy also alleges that Defendant Mason had actual knowledge of the wrongful conduct. (*Id.* ¶¶ 39-41). She alleges that Defendant Mason visits each housing unit every week and that Hennessy personally spoke with Defendant Mason about gender-affirming care, the issuance of a female inmate uniform, and made requests for a female inmate uniform (though these requests were ultimately denied). (*Id.* ¶ 39).

Based on these allegations, Hennessy has pled a supervisory liability claim against Defendant Harry and Mason, and the claims against them will proceed. The Court will deny Defendants' motion to dismiss Harry and Mason from this action.

15

However, the Court finds that Hennessy has failed to sufficiently plead the personal involvement of Defendant Houser. The only allegations against Defendant Houser pertain to her responses to inmate request slips and the forwarding of those request slips to the ADA Coordinators, which does not support the personal involvement of Houser. (Doc. 33 ¶¶ 62, 63). *See also Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). The Court will grant Defendants' motion to dismiss Houser from this action. Hennessy will be afforded the opportunity to file a second amended complaint to correct the identified pleading deficiencies with respect to Defendant Houser.

### B.    Eighth Amendment Claim against all Defendants

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment" to incarcerated individuals. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily

16

recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, and denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury. *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n. 11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346). Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). Claims sounding in mere medical negligence will not suffice. *Rouse*, 182 F.3d at 197. Disagreement as to proper care also does not support a finding of deliberate indifference. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

The amended complaint shows that Hennessy received some level of medical care for her gender dysphoria. Third Circuit precedent makes clear that "a non-medical prison official" cannot "be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference" when the "prisoner is under the care of medical experts" and the official does not have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Durmer*, 991 F.2d at 69 (holding that non-physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical

17

complaints of a prisoner who was already being treated by the prison doctor).  Additionally,

Superintendents and CHCAs are "undisputably administrators, [and] not doctors."  *Thomas*

*v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005).  Here, all named Defendants are non-

medical personnel.[2]  As pled, the amended complaint does not allege that the non-medical

Defendants acted with deliberate indifference to Hennessy's medical needs.[3]  The Eighth

Amendment claim against all Defendants will be dismissed without prejudice and with leave

to amend.

C.     Fourteenth Amendment Due Process Claim against Kanjorski and Muick

Hennessy alleges that Defendants Kanjorski and Muick violated her due process

rights by allegedly violating DC-ADM 804 and DC-ADM 008, respectively.  (Doc. 33 ¶¶ 43,

45, 49, 76, 81).  "[A] prison policy manual does not have the force of law and does not rise

to the level of a regulation" and "a violation of internal policy does not automatically rise to

the level of a Constitutional violation."  *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D.

---

[2]  *See* Doc. 33 ¶¶ 4-16 (identifying the Defendants as follows: Bernadette Mason, Superintendent of SCI-Mahanoy; Jeanne Kanjorski, Corrections Classification Program Manager; Laura Banta, Deputy Superintendent of Centralized Services; Jeff Heyer, Deputy Superintendent of Facility Management; John Chuma, Licensed Psychologist Manager; Edward Gower, Unit Manager; Christina Houser, Corrections Health Care Administrator; Tiffany Fackler, Americans with Disabilities Act Coordinator; Tom Sokaloski, Deputy Superintendent of Centralized Services; Laurel Harry, Secretary of the Department of Corrections; John Muick, Corrections Classification Program Manager and Prison Rape Elimination Act Coordinator; Rebecca Reifer, Americans with Disabilities Act Coordinator; and James Whitaker, Licensed Psychologist Manager.

[3]  In addition, with respect to Hennessy's allegations that Defendants acted with negligent behavior, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

18

Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension"). Accordingly, Hennessy has not alleged a plausible constitutional violation against Defendants Muick and Kanjorski based on the violation of prison policy. This claim will be dismissed with prejudice and without leave to amend.

### D.    Fourteenth Amendment Equal Protection Claim against Kanjoriski, Sokaloski, Harry, Muick, and Whitaker

The Equal Protection Clause of the Fourteenth Amendment states that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "[T]o bring a successful equal protection claim, plaintiffs 'must demonstrate that they received different treatment from that received by other individuals similarly situated.'" *Children's Health Defense, Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 84 (3d Cir. 2024) (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009)). At the pleading stage, a plaintiff must make nonconclusory allegations that she and

the similarly situated individuals who were allegedly treated differently from her are "alike 'in all relevant respects.'" *Id.* (quoting *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020)).

Hennessy asserts that she should receive a female inmate uniform because "biological females are issued the female inmate uniform." (Doc. 33 ¶ 48). Hennessy's claim is essentially that she was not treated the same as female prisoners housed in female prisons. However, Hennessy is housed in male institution and is not similarly situated to biologically female inmates; rather, she is similarly situated to trans-female inmates. Hennessy's failure to identify other similarly situated individuals who were treated differently is fatal to her equal protection claim. This claim will be dismissed without prejudice and with leave to amend.

### E.    ADA Claim against Fackler, Reifer, and Houser[4]

Defendants argue that, assuming that Hennessy's gender dysphoria qualifies as a disability, her claim fails because she "cannot demonstrate she was denied the benefits of any services or programs" or that "she was otherwise discriminated against because of a disability." (Doc. 43, at 14). The Court disagrees. The facts alleged in the amended complaint support a reasonable inference that Hennessy was "precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of

---

[4] As stated *supra*, the Court concludes that the amended complaint fails to adequately plead the personal involvement of Defendant Houser and her forwarding of inmate request forms to the ADA Coordinators is insufficient to establish that she was personally involved in a purported violation of Hennessy's rights under the ADA. Thus, the Court only addresses the ADA claim lodged against Defendants Fackler and Reifer.

20

[their] disability"—Hennessy's gender dysphoria. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019); 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

The ADA provides that:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

"State prisons fall squarely within the statutory definition of 'public entity,'" and thus, must provide "services, programs, or activities" in accordance with the ADA's requirements. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Modern prisons provide "recreational 'activities,' medical 'services,' and educational and vocational 'programs.'" *Id.* The phrase "service, program, or activity" under Title II of the ADA is "extremely broad in scope and includes anything a public entity does." *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015).

Relevant here, necessary medical services and commissary products, qualify as services, programs, or activities, under the broad statutory definition. 42 U.S.C. § 12132. Hennessy adequately alleges that Defendants Fackler and Reifer, in their capacities as ADA Coordinators, denied her requests for secondary treatments, in violation of the ADA. (Doc. 33 ¶¶ 66, 67, 82,83). At this stage of the pleadings, these allegations are sufficient.

Defendants also argue that the allegations of the amended complaint do not support an inference that Hennessy was discriminated against "because of a disability." (Doc. 43, at

21

14). The ADA "only requires but-for causation." *Furgess*, 933 F.3d at 291 n. 25 (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 236 n. 11 (3d Cir. 2013)). "An inmate's failure to allege facts showing that the exclusion or denial of benefits was 'by reason of his disability' warrants dismissal upon a defendant's Rule 12(b)(6) motion." *Desalis v. Pennsylvania Dep't of Corr.*, 2013 WL 2458346, at *2 (E.D. Pa. June 6, 2013). *See also Ali v. Governor of Dela.*, 777 F. App'x 584, 588-89 (3d Cir. 2019) (affirming district court's grant of summary judgment on ADA claim when prisoner plaintiff failed to show how, even assuming bathrooms in law library buildings were inaccessible to him, that excluded him from a program, service, or activity, or how this was discrimination because of his disability). The ADA provides that disability discrimination can take the form of denial or unequal equal provision of services to the disabled because of a disability or a failure to accommodate. *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). "Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Id. See also* 28 C.F.R. § 35.130(b)(1)(i)-(iv).

The amended complaint alleges facts to support an inference that Defendants denied Hennessy necessary medical services because of her disability. A public entity may not "[p]rovide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others." 28 C.F.R. §

22

35.130(b)(1)(iv).  For now, the amended complaint adequately supports an ADA claim.  The Court will deny the motion to dismiss the ADA claim against Defendants Fackler and Reifer.

## IV.    Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).

The Court will give Hennessy an opportunity to attempt to amend the following claims: the claims against Defendant Houser, the Eighth Amendment claim against all Defendants, and the Fourteenth Amendment equal protection claim against Kanjoriski, Sokaloski, Harry, Muick, and Whitaker.  Hennessy is advised that any second amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The second amended complaint shall set forth the claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

23

The legal defects in Hennessy's due process claim against Kanjorski and Muick based on an alleged violation of prison policy cannot be cured by amendment and this claim will be dismissed with prejudice.

## V.   Conclusion

Consistent with the foregoing, Defendants' motion to dismiss will be granted in part and denied in part.  (Doc. 38).  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: June ___, 2026